[No. 37934-8-I. Division One. February 9, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. FONUA AHO,
*Appellant.*

*Shannon B. Marsh* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Tod J. Bergstrom, Deputy*, for respondent.

Cox, J. — A jury convicted Fonua Aho of child molestation and rape of his two daughters. On appeal, he claims that he was prejudiced, as a matter of law, when the trial court permitted the State to amend the information to add alternative charges of child molestation to the pending rape charges before resting its case in chief. He also claims that his convictions under the statutes that became effective in 1988 violate the prohibitions against ex post facto laws. This claim is based on the fact that the charging periods in the amended information included times before the effective dates of the statutes upon which the charges were based.

We hold that the trial court did not abuse its discretion by allowing the State to amend the information before resting. Moreover, the statutes under which Aho was convicted recodified earlier statutes and did not add new elements to

the crimes for which Aho was convicted. But the State properly concedes that Aho's sentence violates the prohibition against ex post facto laws. Accordingly, we affirm in part, reverse in part, and remand for resentencing.

Aho and Sheryl Ayers had two daughters together. N.A. was born in 1981, and M.A. was born in 1983. Aho and Ayers lived together from 1980 to 1985. In 1985, Ayers' other daughter, T.A., complained of sexual abuse by Aho. Ayers demanded that Aho leave the house, and took her children to stay at a friend's house until Aho left. But in 1987, Aho began staying frequently with Ayers at her house.

In the summer of 1995, N.A. and M.A. spent time at their half sister T.A.'s house. During that summer, N.A. told T.A.'s friend that Aho had sexually abused her. N.A. and T.A.'s friend informed T.A. of this disclosure. T.A. then spoke to M.A., who indicated that Aho had also abused her.

The State charged Aho with two counts of first degree child molestation, as defined by RCW 9A.44.083, and two counts of first degree rape of a child, as defined by RCW 9A.44.073. The State served its trial brief on Aho on the first day of trial. In the brief, it notified Aho that, depending on the specificity of M.A.'s trial testimony, it might amend the information to include two additional counts of child molestation as alternatives to the rape charges. After M.A.'s trial testimony and before resting its case in chief, the State moved to amend the information in the manner indicated in its trial brief. The court granted the motion over Aho's objection.

The jury found Aho guilty on both counts of molestation of N.A. It also found him guilty on one count of rape and one alternative count of molestation of M.A.

Aho appeals.

## I. Amendment of Information

Aho contends that the trial court erred by allowing the State to amend its information to include as alternatives to the two counts of first degree rape of a child the two counts of first degree child molestation. We disagree.

The original information charged Aho with two counts of rape of M.A. In its trial brief, served on the first day of trial, the State notified Aho and the court as follows:

> The defendant has been charged with two counts of Child Molestation in the First Degree, and two counts of Rape of a Child in the First Degree. In accordance with the Criminal Rules, the State reserves the right to amend the charging period of these crimes up until the State rests its case. Based upon interviews conducted with the victims the precise dates when these offenses occurred are not known.
>
> Additionally, because [M.A.] is extremely shy — and terrified of the defendant — the State is concerned that she may not articulate facts supporting "sexual intercourse" before the jury, but may nonetheless articulate facts supporting "sexual molestation." In the event this occurs the State will move to amend the information to reflect charges of Child Molestation.

During the 10-day period following service of the State's trial brief, the court heard arguments from the parties respecting the admission and exclusion of evidence and presided over the selection of a jury. The record before us shows that during this part of the proceedings the parties referred to their respective trial briefs when arguing about the admission and exclusion of evidence. But the record also shows that neither party mentioned the possible amendment of the information. On the tenth day following service of the State's brief, the court swore in the jury and began to take evidence.

After N.A. and M.A. had both testified and before its last witness testified in its case in chief, the State indicated that, based on M.A.'s testimony, it had decided to move to amend the information. It sought to add alternative charges of child molestation to the pending rape charges involving M.A. only. The court did not rule on the matter at that time.

After the State's last witness testified, the State moved to amend the information. The State explained its amendment as follows:

> The amendment that the State's requesting only relates to

[M.A.], and the amendment is being made because I continue to have concerns that she has not been able to articulate sexual intercourse or penetration but that she has been able to articulate facts supporting molestation. The amended information simply makes the charge in the alternative, that the jury should first consider the charge of Rape of a Child in the First Degree, and if they are unable to reach a result on that then they are to consider the alternative charge of Child Molestation in the First Degree, and the proposed amendment doesn't create any additional charge, it simply comports with what I described what the State would do in its trial memorandum if the girls were unable to describe things fully.

Aho objected, arguing that he did not receive any notice of the possible amendment of the information until the first day of trial when the State served its trial brief. He also claimed he had not been given an opportunity to conduct discovery on the alternative charges. Noting that the question was whether the substantial rights of Aho had been prejudiced, the trial court considered Aho's arguments and granted the motion to amend. The State then rested its case in chief.

CrR 2.1(d) states that "[t]he court may permit any information . . . to be amended at any time before verdict or finding *if substantial rights of the defendant are not prejudiced*." (Emphasis added.) In *State v. Pelkey*,[1] the Supreme Court articulated a bright-line rule that the State may not amend the information after it has rested its case unless the amended charge is a crime that is "a lesser degree of the same charge or a lesser included offense."[2] The defendant is not required to show prejudice by such an amendment in order to obtain a reversal.[3]

 The bright-line rule does not apply where the court permits the State to amend the information *during* its

[1]109 Wn.2d 484, 745 P.2d 854 (1987).

[2]*Pelkey*, 109 Wn.2d at 491.

[3]*State v. Vangerpen*, 125 Wn.2d 782, 789, 888 P.2d 1177 (1995) (quoting *State v. Markle*, 118 Wn.2d 424, 437, 823 P.2d 1101 (1992)).

case.[4] Where the State amends the information during its case, the inquiry is whether the defendant's " 'substantial rights' " are prejudiced.[5] We will reverse the trial court's determination of whether prejudice exists only upon a showing of abuse of discretion.[6]

Here, the State moved to amend the information before it rested its case in chief. Thus, the amendment does not fall within the rule of *Pelkey*. Aho contends that we should extend the *Pelkey* rule to this case, where the State moved to amend the information after its last witness testified. But our Supreme Court has considered and rejected this argument for extending the *Pelkey* rule to amendments before the State rests.[7] We too reject Aho's argument. In addition, we decline to compare this case with *State v. Hull*,[8] in which the State amended the information after resting. We do so because the issue here is whether, under the facts of this case, Aho can demonstrate that the court abused its discretion by granting the motion to amend prior to the State's resting its case in chief.

We hold that the court did not abuse its discretion. First, the State gave written notice in its trial brief that it might move to amend the information during trial to add the charge of child molestation of M.A. as an alternative to rape of that child. It further explained in that brief that its decision would be based on whether M.A. articulated to the jury during her trial testimony facts supporting "sexual intercourse." If M.A. were able to articulate facts supporting only "sexual molestation" rather than "sexual intercourse," the State intended to move to add the alternative charge of child molestation.

Thus, Aho knew well before the examination of M.A. by either party that the State might move to amend the infor-

---

[4]*State v. Schaffer*, 120 Wn.2d 616, 620-21, 845 P.2d 281 (1993).

[5]*Schaffer*, 120 Wn.2d at 621.

[6]*Schaffer*, 120 Wn.2d at 621-22.

[7]*Vangerpen*, 125 Wn.2d at 790 (quoting *Schaffer*, 120 Wn.2d at 622).

[8]83 Wn. App. 786, 924 P.2d 375 (1996), *review denied*, 131 Wn.2d 1016 (1997).

mation to add the alternative charge. He also knew what factors would influence the State's decision to seek to amend the information. The Supreme Court held that the amendment in *Schaffer* was permissible under similar circumstances. There, the State notified the defendant that it might amend the information to include a specific charge, and the defendant was therefore able to cross-examine the key witness with knowledge of the potential amendment.[9] The same rationale applies to this case. Aho points to nothing in the record to show persuasively how, when forewarned of the State's intention, his trial strategy, cross examination of M.A., or any other fact of consequence to his defense was adversely affected by the amendment.

Second, Aho argued below that he proceeded through discovery before trial on the basis of the assumption that he would be defending against two counts of rape of a child, not child molestation, in M.A.'s case. He protested that child molestation is a different crime, one that he could not meet without requesting a continuance to seek additional discovery.

While child molestation is a different crime from rape of a child, that fact is of no help to Aho here. As the trial court correctly observed below, the critical difference between the main charge of rape and the alternative charge of molestation was whether penetration had occurred.[10] We fail to see how, on these facts, either the lack of either additional discovery or a continuance adversely affected Aho's defense.

In short, there is no showing in the record before us that Aho was "misled or surprised" by the amendment during the State's case in chief, and no specific evidence to support

---

[9] *Schaffer*, 120 Wn.2d at 622.

[10] Child molestation, defined by RCW 9A.44.083, requires a showing of sexual contact. RCW 9A.44.010(2) defines sexual contact as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." Child rape, defined by RCW 9A.44.073, requires a showing of sexual intercourse. Sexual intercourse is defined in RCW 9A.44.010(1)(b) as including "any penetration of the vagina or anus however slight."

a claim of prejudice.[11] It may well be that under other circumstances, an accused would be able to show prejudice by the amendment of an information before the State rested. But based on the facts that are before us, we cannot say that the trial court abused its discretion by granting the State's motion to amend during its case in chief.

## II. Ex Post Facto Laws

The State charged Aho under the current versions of the child molestation and child rape statutes. These laws became effective in July 1988.[12] But the charging period stated in the amended information was for the periods January 1, 1987, to December 31, 1993, with respect to N.A., and January 1, 1987, to August 1, 1995, with respect to M.A. Moreover, the jury was not instructed to indicate the dates it found the alleged acts to have occurred. Thus, Aho claims his convictions violate the ex post facto prohibitions in the federal and state constitutions.[13]

The State concedes that it is impossible to tell from the record whether the jury convicted Aho based on actions that took place before or after July 1, 1988, the effective date of the acts. But it argues that there is no ex post facto violation as to the convictions because the current statutes are simply recodifications of existing law. We agree with the State's position as to the convictions.

The State may not enact a law making criminal acts that were not criminal at the time they were committed.[14] Our Supreme Court has set forth a three-part test to determine whether a statute violates the ex post facto clauses of the state and federal constitutions: "A law violates the ex post facto clause if it: (1) is substantive, as

---

[11]*See Schaffer*, 120 Wn.2d at 622.

[12]LAWS OF 1988, ch. 145, § 2, § 5, effective July 1, 1988.

[13]U.S. Const. art. I, § 10; Const. art. I, § 23.

[14]*State v. Ashcraft*, 71 Wn. App. 444, 451, 859 P.2d 60 (1993) (citing *State v. Edwards*, 104 Wn.2d 63, 70-71, 701 P.2d 508 (1985)).

opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) disadvantages the person affected by it."[15] A law is "disadvantageous" if it alters the standard of punishment which existed under prior law.[16] A recodification of a law disadvantages a defendant if "the legal consequences of committing the act have changed with the new law."[17]

We must first address the question of whether the recodifications created new crimes in order to determine if reversal of the convictions is warranted.

## A. Child Molestation

Prior to July 1, 1988, child molestation was referred to as indecent liberties and was defined by former RCW 9A.44.100. That statute provided in relevant part that

(1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

. . .

(b) When the other person is less than fourteen years of age

. . .

(2) For purposes of this section:

(a) "Sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party.

On July 1, 1988, RCW 9A.44.083 became effective. That statute provides that:

(1) A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person

---

[15]*State v. Hennings*, 129 Wn.2d 512, 525, 919 P.2d 580 (1996) (quoting *In re Personal Restraint of Powell*, 117 Wn.2d 175, 185, 814 P.2d 635 (1991)).

[16]*Hennings*, 129 Wn.2d at 525 (quoting *State v. Ward*, 123 Wn.2d 488, 498, 869 P.2d 1062 (1994)).

[17]*Ashcraft*, 71 Wn. App. at 452.

under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

Sexual contact is defined by RCW 9A.44.010(2) as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."

Aho argues that we should reverse the convictions based on the reasoning of *State v. Hudspeth*.[18] That case presented a set of facts similar to those now before us. There, the State charged Hudspeth under RCW 9A.44.083 (child molestation) for actions allegedly occurring between May 1 and August 31, 1988.[19] The statute did not become effective until July 1, 1988. The former statute, RCW 9A.44.100 (indecent liberties), was in effect prior to that date. The court held that because former RCW 9A.44.100 contained the essential element that the alleged conduct be *knowing*, but RCW 9A.44.083 does not contain this element and the jury was not instructed on the "knowing" element, Hudspeth's conviction violated the ex post facto prohibition.[20]

The State argues that we should not follow *Hudspeth*. We agree with the State and decline to follow that case.

In *Hudspeth*, the court rejected the argument that there was no ex post facto problem on the basis of its conclusion that RCW 9A.44.083 (child molestation) does not have a knowledge element. But that statute expressly requires a showing that sexual contact occurred,[21] which in turn requires a showing that the touching was *"for the purpose of gratifying sexual desire of either party* or a third

[18]63 Wn. App. 683, 821 P.2d 547 (1992).

[19]63 Wn. App. at 685.

[20]63 Wn. App. at 688.

[21]RCW 9A.44.083

party."[22] A purposeful act is an intentional act.[23] Within the degrees of culpability defined by criminal statute, knowing action is included in intentional action.[24] In short, we conclude that the child molestation statute does contain the element of intent that includes a knowledge element.

The court in *Hudspeth* further reasoned that the jury had not been instructed on the knowledge element of the indecent liberties statute. Thus, in the view of the court, it would have been speculative to conclude that the jury found that element. But here the jury was properly instructed with respect to the knowledge element by having been instructed on all elements of first degree child molestation.[25] The jury found that the contact was for the purpose of satisfying sexual desire and thus necessarily found the knowledge element to have been present.

We note that the Legislature revised the age requirements in the July 1, 1988 recodification. However, that revision does not affect the outcome of this case. N.A. was less than 12 years old during the charging period, was never married to Aho, and Aho was clearly more than three years older than N.A.

■ We conclude that RCW 9A.44.083 is simply a recodification of RCW 9A.44.100 and subtracts no elements that are relevant to this case. It does not offend the prohibition

---

[22]RCW 9A.44.010(2) (emphasis added).

[23]*State v. Woolworth*, 30 Wn. App. 901, 905, 639 P.2d 216 (1981). *See also State v. Caliguri*, 99 Wn.2d 501, 506, 664 P.2d 466 (1983); RCW 9A.08.010(1)(a) (defining intent as "when [a person] acts with the objective or purpose to accomplish a result which constitutes a crime").

[24]RCW 9A.08.010(2) states in part that "[w]hen acting knowingly suffices to establish an element, such element also is established if a person acts intentionally." *See also* WPIC 10.02; *State v. Berlin*, 133 Wn.2d 541, 947 P.2d 700 (1997).

[25]Instruction 3 stated that: "A person commits the crime of child molestation in the first degree when that person has sexual contact with another person who is less than twelve years old and who is not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." Instruction 6 stated that: "Sexual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party."

against ex post facto laws as applied in this case to the child molestation conviction.

## B. Child Rape

■ Prior to July 1, 1988, first degree statutory rape was defined by former RCW 9A.44.070 as follows:

(1) A person over thirteen years of age is guilty of statutory rape in the first degree when the person engages in sexual intercourse with another person who is less than eleven years old.

(2) Statutory rape in the first degree is a class A felony. No person convicted of statutory rape in the first degree shall be granted a deferred or suspended sentence except under RCW 9.94A.120(7).

Currently, RCW 9A.44.073(1) provides that

[a] person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim.

The State contends that the former statute does not contain any elements in addition to those included in the current statute. We agree.

The age requirements have changed. Formerly, the statute applied where the victim was less than 11 years old and the perpetrator was at least 13. The current statute applies where the victim is less than 12 years old and the perpetrator is at least two years older than the victim. But the ages of Aho and M.A. clearly fall within both statutes. The current statute also requires that the parties not be married. That is not an issue here because Aho and M.A. were not married.

In short, RCW 9A.44.073 subtracts no elements from those set out in the former statute for the purpose of this

case. There is no violation of the ex post facto prohibition for purposes of the rape conviction.

## C. Sentencing

The State concedes that different sentencing guidelines apply under the current versions of the child rape and child molestation statutes.[26] We accept that concession of error as proper.

■ A statute may not be retroactively applied to increase the punishment attached to a particular crime from the punishment that applied at the time the crime was committed.[27] Thus, to the extent the new guidelines have been applied to Aho's acts committed before the guidelines became effective, their application violates the prohibition against ex post facto laws.[28] We must therefore remand for resentencing under the former sentencing guidelines.[29]

We affirm the convictions for all counts, but vacate the sentences and remand for resentencing under the former sentencing guidelines.

ELLINGTON, J., concurs.

BECKER, J. (concurring) — The former indecent liberties statute, RCW 9A.44.100, and the new child molestation statute, RCW 9A.44.083, are both written to address situations where the defendant causes sexual contact between

---

[26]*See* Historical and Statutory Notes to RCW 9.94A.320. In 1988, the seriousness levels for first degree rape of a child and first degree child molestation were raised. *See also State v. Parker,* 132 Wn.2d 182, 191, 937 P.2d 575 (1997).

[27]*Powell,* 117 Wn.2d at 184 (citing federal and Washington constitutions); *Parker,* 132 Wn.2d at 191.

[28]*See Hennings,* 129 Wn.2d at 525.

[29]*See State v. Gurrola,* 69 Wn. App. 152, 158-59, 848 P.2d 199, *review denied,* 121 Wn.2d 1032 (1993) (remanding for resentencing because seriousness level for first degree rape of a child was increased in the middle of the occurrence of the charged actions).

the young person and a third party, as well as situations in which only the defendant has sexual contact with a young person. In cases involving a third party under either statute, the requirement that the defendant "knowingly causes" a child to have sexual contact with another person establishes a mental state element separate and distinct from the mental state involved in the sexual contact itself. That is because the "purpose of gratifying sexual desire," which is part of the definition of sexual contact, can belong to someone other than the defendant.

In cases like this one where there is no third party, and it is the defendant who must necessarily have the purpose of gratifying sexual desire, the old statute still appears to require that the defendant act both knowingly and with a purpose, while the new statute pointedly omits the word "knowingly." Possibly, this legislative rearrangement of key words reveals a legislative intent to decrease the mental state elements required for a conviction when the defendant is the person who both causes the sexual contact and engages in it. *State v. Hudspeth*[30] so held: "Knowledge is an essential element of [former] RCW 9A.44.100. It has been omitted as an element in RCW 9A.44.083."

The holding of *Hudspeth* is not illogical. To treat the word "knowingly" in the old statute as supplying a distinct element in all cases, including those where no third party is involved, is consistent with the rule of lenity.[31] It is also consistent with the principle that we must construe a statute to give effect to every word.[32] Our courts have recognized "knowingly" as a mental state element of the crime

---

[30]*State v. Hudspeth*, 63 Wn. App. 683, 821 P.2d 547 (1992).

[31]*State v. Lively*, 130 Wn.2d 1, 14, 921 P.2d 1035 (1996) ("The rule of lenity provides that where an ambiguous statute has two possible interpretations, the statute is to be strictly construed in favor of the defendant.").

[32]*State v. Contreras*, 124 Wn.2d 741, 747, 880 P.2d 1000 (1994).

without equating it to the touching "for the purpose of gratifying sexual desire" that defines sexual contact.[33]

Still, respect for the stare decisis value of Court of Appeals' opinions does not strictly bind us to follow *Hudspeth* because it is not clear that the *Hudspeth* court considered the argument we find dispositive in the present case.[34] Rather, we are bound to follow *State v. Woolworth*[35] which came before *Hudspeth*, and which did focus on the issue raised by the State's argument here.

In *Woolworth*, the defendant admitted having physical contact with his stepdaughter but denied that it was knowingly sexual. Affirming the conviction for indecent liberties under the former statute, RCW 9A.44.100, the court held a defective instruction on "knowledge" to be harmless error because by finding the defendant acted for the purpose of gratifying his sexual desire, the jury necessarily found he acted knowingly. *Woolworth* compels the conclusion that by convicting Aho of child molestation, the jury necessarily considered the mens rea required for the former crime of indecent liberties.

Review granted at 136 Wn.2d 1007 (1998).

---

[33]*See Welfare of Shope*, 23 Wn. App. 567, 596 P.2d 1361 (1979); *State v. Jones*, 82 Wn. App. 871, 920 P.2d 225 (1996).

[34]*See In re Personal Restraint of Burton*, 80 Wn. App. 573, 584, 910 P.2d 1295 (1996).

[35]*State v. Woolworth*, 30 Wn. App. 901, 639 P.2d 216 (1981).